Walter CORDELL, III, Plaintiff,

v.

James E. TILTON, et al., Defendants.

Civil No. 07cv0079 J(RBB).

United States District Court,
S.D. California.

Sept. 17, 2007.

Walter Cordell, III, Orange, CA, Pro se.

Attorney General, Michelle DeSjardins, State of California Office of the Attorney General, San Diego, CA, for Defendants.

## ORDER:

1) ADOPTING MAGISTRATE JUDGE BROOKS' R & R;

2) GRANTING DEFENDANTS' MOTION TO DISMISS [DOC. NO. 8]; AND

3) DENYING PLAINTIFF'S MOTION FOR LEAVE OF COURT TO AMEND [DOC NO. 11]

NAPOLEON A. JONES, JR., District Judge.

Plaintiff Walter Cordell, III ("Plaintiff") filed a civil rights complaint ("Complaint") pursuant to 42 U.S.C. § 1983 ("Section 1983") in which he alleges that his parole supervisors ("Defendants") imposed and enforced unconstitutional conditions of parole that effectively banished Plaintiff from his home, violated his right to due process by extending his period of parole beyond the term he agreed to under a plea bargain, and deprived him of his right to freedom of association. [Doc. No. 1.] On February 1, 2007, Defendants filed a Motion to Dismiss Plaintiff's Complaint. [Doc. No. 8.] Before the Court is the Report and Recommendation ("R & R") of Magistrate Judge Ruben B. Brooks recommending that the Court grant Defendants' Motion to Dismiss Plaintiff's Complaint. [Doc. No. 16.] On August 31, 2007, Defendants filed their Objections to the R & R. [Doc. No. 17.] For the reasons set forth below, the Court **ADOPTS** the R & R and **GRANTS** Defendants' Motion to Dismiss. Further, the Court **DENIES** Plaintiff leave to amend his Complaint.

### Procedural Background

Plaintiff was arrested and charged with attempted murder and assault with a deadly weapon after he severely beat a female victim with a wooden dowel; the victim suffered a broken finger and needed over fifty stitches in her head. (Compl. Ex. A at 1, Ex. M at 2, Ex. N at 2.) On July 13, 2001, Plaintiff entered an agreement to plead guilty to assault with a deadly weapon inflicting great bodily injury in exchange for a three-year prison term followed by three years of parole. (Compl. Ex. N at 1–2.) After serving thirty months of his three year sentence, Plaintiff was paroled to San Diego County. Plaintiff's parole included a special condition that prohibited Plaintiff from returning to Orange County. (Compl. Ex. A at 1.) Plaintiff violated his parole by returning to

Orange County and was sentenced to eight months of incarceration. On July 3, 2004, Plaintiff was released on parole. Plaintiff violated his parole a second time by returning to Orange County and was sentenced to ten months incarceration. (Compl. Pl.'s Mem. of P. & A. at 2.) On May 24, 2006, Plaintiff was released from custody. Plaintiff violated his parole a third time by traveling beyond fifty miles of his home. (Compl. Ex. J at 1–2.) Plaintiff was sentenced to four months imprisonment. *Id.* at 2. After serving the sentence for his third parole violation, Plaintiff was paroled a fourth time. (Defs.' Mem. 3.) Plaintiff has now absconded from his parole and there is a parolee-at-large warrant currently pending against him. (*See id.*)

In his Complaint, Plaintiff alleges that Defendants knowingly and blatantly administered illegal and unconstitutional conditions of parole that violate both the California and United States Constitutions by effectively banishing him from his home and denying him his right to freedom of association. (Compl. Pl.'s Mem. of P. & A. at 2.) Plaintiff asserts that the terms of his parole include a condition precluding him from returning to Orange County, his home. *Id.* at 1. At the time of his release, Plaintiff was prepared with living arrangements and employment to return to Orange County. *Id.* Plaintiff alleges that he was unable to find employment in nearby San Diego County and that, in part, he violated his probation by returning to Orange County because he missed his family and was suffering emotional distress as a result of being banished from his home and the resulting inability to see his children, attend his church, or find employment. *Id.*

Plaintiff also contends that Defendants violated his right to due process by extending his period of parole beyond the term he agreed to under a plea bargain. (Compl. Pl.'s Mem. of P. & A. at 8.) Plaintiff asserts that he plea bargained his entire sentence including the period of parole to obtain a lighter sentence and that the additional time added to his period of parole is a violation of that plea agreement and his right to due process. *Id.*

Plaintiff also asserts that Defendants prohibited his freedom of association by banishing him from his home. (Compl. Pl.'s Mem. of P. & A. at 11.) As a result of the parole condition prohibiting Plaintiff from entering San Diego County, Plaintiff was unable to attend his church or meet with his AA home group. *Id.* Plaintiff argues that the parole restriction and resulting violation of the Plaintiff's right to free association have no relationship to his offense and are also not related to any potential criminal conduct. *Id.* at 12. Plaintiff concludes that these parole conditions unreasonably violate Plaintiff's right to free association and are invalid. *Id.* at 13.

According to the Complaint, Plaintiff seeks to recover monetary damages in excess of twenty-one million dollars, an injunction preventing Defendants from enforcing the conditions of his parole, an order that he be immediately released from parole, and "oversight of the [California Department of Corrections] to prevent future violations of individuals['] constitutional rights." (Compl. at 7.)

In their Motion to Dismiss, Defendants argue that: (1) the fugitive disentitlement doctrine precludes Plaintiff from litigating these claims, (2) Defendants are absolutely immune from liability for damages, (3) Plaintiff's claims are not properly brought in a Section 1983 action, (4) Plaintiff's claims are without merit, and (5) Defendants are entitled to qualified immunity. (Defs.' Mem. 6–14.) Plaintiff submitted an Opposition to Motion to Dismiss [doc. no.

13] and a Motion for Leave of Court to Amend Complaint [doc. no. 11]. Plaintiff seeks to amend his Complaint to assert claims against the Defendants in their individual capacities rather than their official capacities. (Mot. to Amend 1.)

### Legal Standard

The duties of the district court in connection with a magistrate judge's report and recommendation are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and in 28 U.S.C. § 636(b)(1). *See* Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1) (2005). The district court must "make a de novo determination of those portions of the report ... to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *See* 28 U.S.C. § 636(b)(1) (2005); *United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). In the instant case, Defendant has filed an Objection to the R & R. Accordingly, this Court will conduct a de novo review of the conclusions of law and the findings of fact to which Defendant has objected.

 Dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6) is appropriate only where " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1061 (9th Cir.2004)(quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable theory. *See Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001). In reviewing the motion, the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving par-

ty. *See Gompper v. VISX, Inc.,* 298 F.3d 893, 896 (9th Cir.2002).

### Discussion

Plaintiff contends in his Section 1983 action that Defendants administered illegal parole conditions and extended his parole term in violation of the California and United States Constitutions. In response, Defendants assert that Plaintiff's claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff: (1) is barred from litigating these claims under the fugitive disentitlement doctrine, (2) Defendants are absolutely immune from liability for damages, (3) Plaintiff's claims are not properly brought in a civil rights action, (4) Plaintiff's claims are without merit, and (5) Defendants are entitled to qualified immunity. (*See* Defs.' Mem. 6–14.) For the reasons stated below, the Court **ADOPTS** the R & R and **GRANTS** Defendants' Motion to Dismiss. Further, the Court **DENIES** Plaintiff leave to amend his Complaint.

### I. Defendants' Motion to Dismiss

#### A. Fugitive Disentitlement Doctrine

 The fugitive disentitlement doctrine provides that an individual "who seeks to invoke the processes of the law while flouting them has no entitlement 'to call upon the resources of the Court for determination of his claims.' " *Conforte v. Comm'r,* 692 F.2d 587, 589 (9th Cir.1982) (quoting *Molinaro v. New Jersey,* 396 U.S. 365, 366, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970)). Courts have regularly applied this doctrine to dismiss both criminal appeals and related civil proceedings instituted by fugitives. *See, e.g., Molinaro,* 396 U.S. at 366, 90 S.Ct. 498 (appeal from criminal conviction); *United States v. $129, 374 in U.S. Currency,* 769 F.2d 583, 587–88 (9th Cir.1985) (civil forfeiture proceed-

ing); *Conforte,* 692 F.2d at 589–90 (appeal from decision of tax court arising from criminal conviction for tax fraud); *Doyle v. Dept. of Justice,* 668 F.2d 1365, 1365–66 (D.C.Cir.1981) (suit brought under the Freedom of Information Act for records relating to plaintiff's criminal sentence); *Griffin v. New York Corr. Cmm'r,* 882 F.Supp. 295, 297 (E.D.N.Y.1995).

 The application of the fugitive disentitlement doctrine is discretionary. *United States v. Van Cauwenberghe,* 934 F.2d 1048, 1054–55 (9th Cir.1991) (citing *Katz v. United States,* 920 F.2d 610, 611–12 (9th Cir.1990)); *Hussein v. I.N.S.,* 817 F.2d 63, 63 (9th Cir.1986). The doctrine does not deprive the Court of jurisdiction to hear a plaintiff's claims but instead authorizes their dismissal of the claims based on equitable considerations. *Id.* (Citations omitted). For the application of the fugitive disentitlement doctrine to be appropriate, the Court must first determine whether Plaintiff is properly characterized as a fugitive. *See United States v. Gonzalez,* 300 F.3d 1048, 1051 (9th Cir.2002). "The doctrine does not apply to [a party] just because he has not reported as directed to the probation office, in the absence of a showing that he has fled or hidden himself from the jurisdiction of the court." *Id.*

Plaintiff admits that he is a fugitive and that he is actively evading arrest. A warrant has been issued for Plaintiff's arrest and he is considered a parolee-at-large. Plaintiff claims that despite his fugitive status, he should be permitted to litigate these claims. (Notice of Opp'n 1–2). Magistrate Judge Brooks correctly found that this argument fails. It would be inequitable to allow Plaintiff to litigate his claims challenging the legality of his parole while he remains a fugitive from the legal system. Accordingly, this Court **GRANTS** Defendants' Motion to Dismiss the Plain-

tiff's Complaint under the fugitive disentitlement doctrine.

## B. Absolute Immunity for Defendants

 The Eleventh Amendment entitles parole officials to absolute immunity from lawsuits for actions that they take that are quasi-judicial in nature. Such duties include the decision to grant, deny, or revoke parole. *Swift v. California,* 384 F.3d 1184, 1189 (9th Cir.2004); *Anderson,* 714 F.2d at 908–09; *Sellars v. Procunier,* 641 F.2d 1295, 1303 (9th Cir.1981). Because parole conditions are an integral part of the decision to grant parole, their imposition is a quasi-judicial function and entitle Defendants to absolute immunity. *Anderson,* 714 F.2d at 909 (citing *Morrissey v. Brewer,* 408 U.S. 471, 478, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)).

 Parole officials, however, are not entitled to absolute immunity for actions they take in a law enforcement capacity. A parole agent is functioning as a police officer when issuing an arrest warrant or investigating a possible parole violation and, as a result, is not entitled to absolute immunity for these actions. *Id.* at 1191–92 (citing *Johnson v. Rhode Island Parole Bd. Members,* 815 F.2d 5, 8 (1st Cir.1987)). Defendants Tilton and Quintanilla were primarily responsible for the imposition of parole and the parole conditions assigned to Plaintiff and are absolutely immune from civil liability for these actions taken in their official capacity. Defendants Sanchez and Trujillo were responsible for investigating Plaintiff's parole violation and issuing the arrest warrant and, as a result, are not entitled to absolute immunity for these law enforcement actions.

 Defendants object to the Magistrate Judge Brooks' finding that Defendants Sanchez and Trujillo are not entitled

to absolute immunity for their law enforcement actions as they relate to Plaintiff's parole violations. Defendants assert that the Supreme Court held in *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), that Section 1983 claims brought against state officials in their official capacities are barred under the Eleventh Amendment. Defendants fail to consider that the applicability of absolute immunity, as opposed to qualified immunity, is determined by the functions officials perform. *Anderson v. Boyd,* 714 F.2d 906, 908 (9th Cir.1983) (citing *Butz v. Economou,* 438 U.S. 478, 511–12, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)). The decisions involved in the application and enforcement of parole are quasi-judicial functions and entitle state officials to absolute immunity. Under California's system of parole, however, "a parole agent acts as a law enforcement official when investigating parole violations and executing parole holds." *Swift v. California,* 384 F.3d 1184, 1189 (9th Cir.2004). In *Swift,* the Ninth Circuit held that parole agents are not entitled to absolute immunity when acting in a law enforcement capacity. *Id.* Here, Defendants Sanchez and Trujillo were acting as law enforcement officers when they investigated the parole violation and issued the arrest warrant. As a result, they are not entitled to absolute immunity for these actions.

As such, the Court **GRANTS** Defendants Motion to Dismiss on the grounds that Defendants are entitled to absolute immunity with regards to Defendants Tilton and Quintanilla and **DENIES** Defendants Motion to Dismiss with regards to Defendants Sanchez and Trujillo.

**C. Plaintiff's Claims under Section 1983.**

 A prisoner's Section 1983 action is barred if the prisoner has to demonstrate the invalidity of his confinement in order to be granted relief. *Wilkinson v. Dotson,* 544 U.S. 74, 81–82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005); *Heck,* 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *Butterfield v. Bail,* 120 F.3d 1023, 1024 (9th Cir.1997)(discussing *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997)). A habeas action remains the exclusive remedy for a state prisoner who challenges the duration of his or her confinement even if any potential claim may come within the literal terms of Section 1983. *Heck,* 512 U.S. at 481, 114 S.Ct. 2364 (citing *Preiser v. Rodriguez,* 411 U.S. 475, 488–90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)); *see also Wilkinson v. Dotson,* 544 U.S. at 78, 125 S.Ct. 1242. The Supreme Court held that, like a prisoner, a parolee can properly proceed with a habeas corpus petition to challenge his or her underlying sentence because a parolee is still "in custody" within the meaning of the habeas petition. *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). Although the law is clear with regards to the exclusivity of habeas actions for prisoners challenging their confinement and the ability of parolees to file habeas petitions to challenge their sentences, the law remains unclear with regards to whether habeas actions are the exclusive remedy for parolees challenging their sentence.

 Magistrate Judge Brooks provides a persuasive analysis. The Seventh Circuit is the only circuit court of appeals that has definitively answered the question. In *Drollinger v. Milligan,* 552 F.2d 1220 (7th Cir.1977), the Seventh Circuit found that habeas corpus was the exclusive means for a probationer to challenge the terms of his or her probation. *Drollinger,* 552 F.2d at 1225. The court stated that because the parole conditions themselves are what keep a parolee in custody, any

challenges to those conditions must be brought in a habeas petition. Using the Seventh Circuit's analysis, Plaintiff's first and third causes of action, which challenge the conditions of his parole can only be properly brought in a habeas action. Additionally, Plaintiff's second cause of action, alleging that his parole term has been extended beyond his sentence (compl.4.) is a direct challenge of the duration of his sentence which, as the Supreme Court noted in *Jones,* can only be done in a habeas petition. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss on the grounds that Plaintiff's claims are not properly brought in a Section 1983 civil action.

### D. Merit of Plaintiff's Claims under Rule 12(b)(6)

Pursuant to Rule 12(b)(6), the Court may grant a motion to dismiss for failure to state a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The Court must assume the Plaintiff's factual allegations are true and resolve all reasonable inferences in his favor. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001).

 Although a court granting parole may impose reasonable conditions on the parolee that affect some of the freedoms enjoyed by law-abiding citizens, the constitutionality of a parole condition is a fact specific inquiry. A special condition of parole will be upheld if it has a rational basis and is reasonably related to the nature of the offense and the history and characteristics of the offender. *See United States v. T.M.,* 330 F.3d 1235, 1240 (9th Cir.2003); *Bagley,* 718 F.2d at 925; *see also Yahweh v. U.S. Parole Comm'n,* 158 F.Supp.2d 1332, 1344 (S.D.Fla.2001) (applying the "reasonably related" test to parolee's challenge to parole conditions made on the basis of freedom of association). A parole condition can impose no greater deprivation of liberty than is reasonably necessary to advance the government interest underlying the condition. *See United States v. Rearden,* 349 F.3d 608, 621 (9th Cir.2003). Here, Plaintiff pleaded guilty to committing a violent assault against a victim who resides in Orange County. Additionally, the victim requested that Plaintiff not be returned to Orange County. Thus, there is a rational basis for the government to prohibit Plaintiff's entry into Orange County. The government, however, does not provide Plaintiff with the option to pursue an exception to this restriction even though Plaintiff's family, including his children, reside in Orange County. In *Bagley v. Harvey,* 718 F.2d 921 (9th Cir.1983), the Ninth Circuit upheld a condition prohibiting a parolee from entering Washington unless he first received permission from the parole commissioner. This permission was granted for purposes of litigation or child visitation. *Id.* In light of *Bagley,* the absolute restriction from entering Orange County in Plaintiff's case is overbroad and not reasonably related to accomplishing the government's objective.

In its Objection, Defendants argue that the parole conditions prohibiting Plaintiff from entering Orange County provide an exception. Defendants cite California Code of Regulations, title 15, section 2512(a)(3) as providing this exception by saying a parolee "shall comply with all instructions of your parole agent and will not travel more than 50 miles from his residence." Cal.Code Regs. tit. 15, § 2512(a)(3) (West 2007). Although this exception allows Plaintiff to seek special permission to travel, it only refers to the parole condition that limits the distance a

Plaintiff can travel from his residence. This provision does not reference Plaintiff's ability to enter Orange County. Thus, the condition prohibiting entry into Orange County remains overbroad and unconstitutional. The condition is also not reasonably necessary to accomplishing the government's goal of maintaining the safety of the victim since the goal can be maintained with an exception allowing the Plaintiff to enter Orange County. As a result, Plaintiff has sufficiently alleged a constitutional violation with regards to claims one and two of his Complaint.

 Plaintiff alleges in claim two of his Complaint that Defendants illegally violated his plea agreement by keeping him on parole after the expiration of the three-year parole term. Under California law, the "[t]ime during which parole is suspended because the prisoner has absconded or has been returned to custody as a parole violator shall not be credited toward any period of parole unless the prisoner is found not guilty of the parole violation." Cal.Penal Code § 3000(b)(5) (West Supp. 2007); see also Cal.Code Regs. tit. 15, § 2515(a) (West 2007). Accordingly, the time that Plaintiff served for each of his parole violations is not counted towards the three-year parole period and the extension of Plaintiff's parole for the periods that he was in custody was done in compliance with California law. Thus, Plaintiff has not sufficiently alleged facts that support relief on his second claim.

As such, the Court **GRANTS** Defendants' Motion to Dismiss on the grounds that Plaintiff has failed to state a claim with regards to Plaintiff's second claim and **DENIES** the Motion to Dismiss on the grounds that Plaintiff has failed to state a claim with regards to Plaintiff's first and second claims.

### E. Defendants' Entitlement to Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (emphasis added). A constitutional right is "clearly established if it is sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The "threshold inquiry a court must undertake in a qualified immunity analysis is whether Plaintiff's allegations, if true, establish a constitutional violation." *Hope*, 536 U.S. at 736, 122 S.Ct. 2508; *see also Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If the allegations make out a constitutional violation, the next step is to determine whether the right alleged to have been violated is "clearly established." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151.

#### 1. Parole Conditions Restricting Entry into Orange County.

 Plaintiff does not have a constitutional right to be paroled to the location of his choice. *Bagley v. Harvey*, 718 F.2d 921, 924 (9th Cir.1983); *Zupan v. Brown*, 5 F.Supp.2d 792, 804 (N.D.Cal. 1998); *see also Alonzo v. Rozanski*, 808 F.2d 637, 638 (7th Cir.1986). Under some circumstances, however, parole conditions that cause the de facto banishment of a parolee can amount to an unconstitutional infringement of liberty. *See Dear Wing Jung v. United States*, 312 F.2d 73, 76 (9th Cir.1962) (finding unconstitutional a sen-

tencing condition that required the foreign citizen defendant to depart from the United States). Thus, Plaintiff's claim that he was banished from his home due to the imposition of an unreasonable parole condition is based on a valid legal theory that, under the correct factual situation, could entitle him to relief. As stated above, Plaintiff's parole condition prohibiting entry into Orange County is both rationally related to the offense and overbroad. Thus, taken in the light most favorable to the Plaintiff, Plaintiff has sufficiently alleged a constitutional violation with regards to that claim.

 The above right, however, was not clearly established. For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034; *see also Saucier,* 533 U.S. at 202, 121 S.Ct. 2151. California Penal Code Section 3003 provides that "an inmate who is released on parole shall be returned to the county that was the last legal residence of the inmate prior to his or her incarceration." Cal.Penal Code § 3003(a) (West.Supp. 2007). But "an inmate may be returned to another county [other than that of his last legal residence] if that would be in the best interests of the public." Cal.Penal Code § 3003(b). Additionally, "an inmate who is released on parole shall not be returned to a location within 35 miles of the actual residence of a victim of … a felony in which the defendant inflicts great bodily injury [,]" if the victim requests additional distance and the CDC finds there is need to protect the victim's safety. Cal.Penal Code § 3003(f). In imposing the conditions of Plaintiff's parole, Defendants relied on these statutes. Thus, the parole regulations are not obviously unconstitutional and, as a result, Plaintiff cannot prove that Defendants have violated Plaintiff's clearly established constitutional rights.

### 2. Extension of Period of Parole

As discussed above, Plaintiff's second claim that Defendants violated his right to due process by extending his term of parole beyond the three-year period included in his plea agreement is erroneous. (Compl. 4; Compl. Mem. of P. & A. at 7–11.) Under California law, the time that Plaintiff served for each of his parole violations is not counted towards the three-year parole period. Thus, the "extension" of Plaintiff's parole for the time served is in compliance with California law and is not a violation of a constitutional right. Additionally, because the extension was set pursuant to duly enacted statutes, even if Plaintiff could make out a due process claim, Defendants are entitled to qualified immunity. A reasonable parole official would have believed that reliance on provisions of the California Penal Code was appropriate and in compliance with constitutional standards. *See Dittman v. California,* 191 F.3d at 1020, 1027 (9th Cir. 1999). Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss on the grounds that Defendants are entitled to qualified immunity.

### II. *Motion for Leave of Court to Amend Complaint*

Federal Rule of Civil Procedure 15 provides that leave to amend a complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Unless it is absolutely clear that amendments to the complaint cannot cure its deficiencies, a pro se litigant must be given leave to amend and the district court must give the litigant a statement of the complaint's deficiencies. *See Karim–Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 623 (9th

Cir.1988). Here, granting Plaintiff's Motion to Amend his Complaint to sue Defendants in their individual capacities rather than their official capacities would be futile. As discussed above, Defendants' Motion to Dismiss is granted on the grounds that Plaintiff's claims are properly brought in a habeas corpus petition and that Plaintiff is not entitled to proceed under the fugitive disentitlement doctrine. Allowing Plaintiff to amend his Complaint to sue Defendants in their individual capacity does not rectify the grounds for dismissal. Thus, the Court **DENIES** Plaintiff's Motion for Leave to Amend Complaint.

### Conclusion

For the reasons set forth above, the Court **ADOPTS** the R & R and **GRANTS** Defendants' Motion to Dismiss and **DENIES** Plaintiff's Motion for Leave of Court to Amend, and **DISMISSES WITH PREJUDICE** this action in its entirety.

**IT IS SO ORDERED.**

**REPORT AND RECOMMENDATION RE: GRANTING DEFENDANTS' MOTION TO DISMISS [DOC. NO. 8] AND DENYING PLAINTIFF'S MOTION FOR LEAVE OF COURT TO AMEND COMPLAINT [DOC. NO. 11]**

RUBEN B. BROOKS, United States Magistrate Judge.

Plaintiff Walter Cordell, III filed a civil rights Complaint [doc. no. 1] on January 11, 2007, pursuant to 42 U.S.C. § 1983. Cordell asserts that Defendants imposed and enforced unconstitutional conditions of parole that effectively banished Plaintiff from his home. (Compl.2–3.) Cordell also claims his right to due process was violated when Defendants extended his period of parole beyond the term he agreed to under a plea bargain. (*Id.* at 4.) Lastly, Plaintiff contends that Defendants deprived him of freedom of association by banishing him from Orange County because the banishment prevented him from attending his Alcoholics Anonymous ("AA") group meetings and his church. (*Id.* at 4–5.) Cordell seeks to recover monetary damages in excess of twenty-one million dollars, an injunction preventing Defendants from enforcing the conditions of his parole, an order that he be immediately released from parole, and "oversight of the [California Department of Corrections] to prevent future violations of individuals['] constitutional rights." (*Id.* at 7.)

On February 1, 2007, Defendants filed a Motion to Dismiss [doc. no. 8]. Defendants claim the Complaint should be dismissed for the following reasons: (1) Cordell is precluded from litigating this case under the fugitive disentitlement doctrine; (2) Defendants are absolutely immune from liability for damages; (3) Plaintiff's claims are not properly brought in a civil rights action; (4) Cordell's claims are without merit; and (5) Defendants are entitled to qualified immunity. (Defs.' Mem. 6–14.)

Plaintiff submitted an Opposition to Motion to Dismiss [doc. no. 13], which was filed *nunc pro tunc* to March 5, 2007. Cordell also filed a Motion for Leave of Court to Amend Complaint [doc. no. 11]. Plaintiff seeks to amend his Complaint to assert claims against the Defendants in their individual capacities rather than their official capacities. (Mot. to Amend 1.) On March 9, 2007, Defendants filed a Reply to Opposition to Motion to Dismiss [doc. no. 9]. The Court found Defendants' Motion suitable for decision without oral argument pursuant to Civil Local Rule 7.1(d)(1) [doc. no. 14].

For the reasons set forth below, the district court should **GRANT** Defendants' Motion to Dismiss and **DENY** Plaintiff's Motion for Leave of Court to Amend Complaint.

## I. FACTUAL BACKGROUND

Plaintiff was arrested and charged with attempted murder and assault with a deadly weapon after he severely beat a female victim with a wooden dowel; the victim suffered a broken finger and needed over fifty stitches in her head. (Compl. Ex. A at 1, Ex. M at 2, Ex. N at 2.) On July 13, 2001, Cordell entered an agreement to plead guilty to assault with a deadly weapon inflicting great bodily injury in exchange for a three-year prison term followed by three years of parole. (Compl. Ex. N at 1–2.)

Plaintiff filed a federal petition for writ of habeas corpus, alleging that the three-year parole period to follow his incarceration constituted an unlawful extension of his sentence, resulting in double jeopardy, a denial of due process, and an ex post facto violation. (Compl. Ex. M at 3.) The petition was denied. *(See id.* at 15.)

After serving thirty months of his three-year sentence, Cordell was paroled on July 9, 2003, to San Diego County, and Defendant Santos Sanchez was assigned to be his parole agent. (Compl. Pl.'s Mem. of P. & A. at 1; Compl. Ex. A at 1.) As a special condition of his parole, Plaintiff was not allowed to return to Orange County. (Compl. Ex. A at 1.) This condition was based on the victim's request and on the concern for her safety due to the violent nature of Cordell's offense. *(Id.)* Defendant Mark Quintanilla is the Parole Supervisor who approved Plaintiff's special conditions of parole. *(Id.* at 5.)

Four months after he was released, Cordell violated his parole by returning to Orange County. (Compl. Pl.'s Mem. of P. & A. at 14; Compl. Ex. B at 1.) He was sentenced to eight months in custody. (Compl. Ex. B at 1.) During the hearing to determine his sentence for the parole violation, the hearing officer directed the California Department of Corrections

("CDC") to re-evaluate the special condition of Petitioner's parole forbidding entry into Orange County as possibly being too restrictive. *(Id.)*

While serving his sentence for the parole violation, Cordell filed an inmate appeal (known as a "CDC form 602") requesting that his parole conditions be revised to remove the provision forbidding him from entering Orange County and to eliminate a 7:00 p.m. curfew. (Compl. Ex. C at 5.) The appeal was denied at the informal level. *(Id.* at 6.) Plaintiff was interviewed by Defendant Quintanilla on March 30, 2004, after which his appeal was denied at the first formal level of review. *(Id.* at 2–4.) Cordell also filed an appeal with the Board of Prison Terms, again complaining that his parole conditions were illegal and should be modified. (Compl. Ex. D at 1.)

Plaintiff was released on July 3, 2004. (Compl. Ex. A at 1.) He violated his parole a second time by again returning to Orange County and violating other special conditions of his parole including drinking and possessing alcohol. (Compl. Pl.'s Mem. of P. & A. at 2; Compl. Ex. A at 1.) He was sentenced to ten months incarceration. (Compl. Pl.'s Mem. of P. & A. at 2.)

While serving his sentence for the second parole violation, Cordell filed an inmate appeal complaining that he was informed he would be paroled to San Francisco and requesting that upon his release he instead be allowed to return to San Diego. (Compl. Ex. E at 1–2.) The appeal was denied as untimely. *(Id.* at 3.) Plaintiff then sent a 602 form directly to the CDC headquarters in Sacramento, California, without first going through the lower levels of review, but the form was returned to him for failure to properly follow the appeal process.

(Compl. Pl.'s Mem. of P. & A. at 15–16; Compl. Ex. F.)

Plaintiff then filed a state habeas petition in the Orange County Superior Court alleging that he was told by his parole agent he would be required to spend one extra year on parole based on his violations, which Plaintiff alleged would violate his plea agreement. (Compl. Ex. S at 3.) That petition was denied. (Compl. Ex. T at 4.) Cordell subsequently filed another habeas corpus petition in the Orange County Superior Court claiming that if he were paroled to San Francisco rather than San Diego it would constitute unconstitutional banishment from his home. (Compl. Ex. H at 2.) This petition was also denied. (Id. at 3.)

Plaintiff was released from custody on May 24, 2006. (Compl. Ex. I at 1.) He was paroled to Moreno Valley, California, which is located in Riverside County. (Id.) Defendant Ronald Trujillo was assigned to be his parole agent. (Id.) Cordell violated his parole a third time by traveling beyond fifty miles of his home. (Compl. Ex. J at 1–2.) He was sentenced to four months imprisonment. (Id. at 2.)

After serving his sentence for the violation, Plaintiff was paroled a fourth time. (Defs.' Mem. 3.) Cordell has now absconded from his parole, and there is a parolee-at-large warrant currently pending against him, which was issued by Defendant Trujillo. (See id.; Compl. 3; Civil Cover Sheet.)

## II. APPLICABLE LEGAL STANDARDS

### A. *Motions to Dismiss Pursuant to Rule 12(b)(6)*

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). A claim can only be dismissed "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Hughes v. Rowe*, 449 U.S. 5, 10 n. 7, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quotations and citations omitted). The Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir.2004) (citing *Karam v. City of Burbank*, 352 F.3d 1188, 1192 (9th Cir. 2003)); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995); *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986).

The question is not whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988).

The Court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir.1992) (citation omitted); *Halkin v. VeriFone, Inc.*, 11 F.3d 865, 868 (9th Cir.1993); *see also Cholla Ready Mix*, 382 F.3d at 973 (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir.1994)) (stating that on Rule 12(b)(6) motion, a court "is not re-

quired to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged[ ]"). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001).

 In addition, when resolving a motion to dismiss for failure to state a claim, the Court may not generally consider materials outside the pleadings. *Schneider v. Cal. Dep't of Corr.,* 151 F.3d 1194, 1197 n. 1 (9th Cir.1998); *Jacobellis v. State Farm Fire & Cas. Co.,* 120 F.3d 171, 172 (9th Cir.1997); *Allarcom Pay Television Ltd. v. Gen. Instrument Corp.,* 69 F.3d 381, 385 (9th Cir.1995). "The focus of any Rule 12(b)(6) dismissal ... is the complaint." *Schneider,* 151 F.3d at 1197 n. 1. This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6). *Id.* (citing *Harrell v. United States,* 13 F.3d 232, 236 (7th Cir.1993)); 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.34[2], at 12–72 (3d ed. 1997) ("The court may not ... take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).").

But "[w]hen a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper...." *Parks Sch. of Bus.,* 51 F.3d at 1484 (citing *Cooper v. Bell,* 628 F.2d 1208, 1210 n. 2 (9th Cir.1980)). The Court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994), *over-*

*ruled on other grounds by Galbraith v. County of Santa Clara,* 307 F.3d 1119 (9th Cir.2002); *Stone v. Writer's Guild of Am. W., Inc.,* 101 F.3d 1312, 1313–14 (9th Cir. 1996).

These Rule 12(b)(6) guidelines apply to Defendants' Motion to Dismiss.

### B. *Standards Applicable to Pro Se Litigants*

 Where a plaintiff appears in propria persona in a civil rights case, the Court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim–Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir.1992). In giving liberal interpretation to a pro se civil rights complaint, however, the Court may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir.1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.; see also Jones v. Cmty. Redev. Agency,* 733 F.2d 646, 649 (9th Cir.1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones,* 733 F.2d at 649 (internal quotation omitted).

Nevertheless, the Court must give a pro se litigant leave to amend his complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson,* 809 F.2d 1446, 1447 (9th Cir.1987). Thus, before a pro se civil rights complaint may be dismissed, the court must provide the

plaintiff with a statement of the complaint's deficiencies. *Karim–Panahi*, 839 F.2d at 623–24. Where amendment of a pro se litigant's complaint would be futile, denial of leave to amend is appropriate. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir.1996).

### C. *Stating a Claim Under 42 U.S.C. § 1983*

To state a claim under § 1983, the plaintiff must allege facts sufficient to show two things: (1) A person acting "under color of state law" committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C.A. § 1983 (West 2003); *Shah v. County of Los Angeles*, 797 F.2d 743, 746 (9th Cir.1986).

### III. DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss Cordell's Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to allege facts sufficient to state a claim for relief under 42 U.S.C. § 1983. (Defs.' Mem. 5.) Specifically, they claim the Complaint fails to state a claim because Cordell is precluded from litigating this case under the fugitive disentitlement doctrine. *(Id.* at 6.) These individual Defendants also allege that Plaintiff's claims for damages should be dismissed because Defendants are absolutely immune from liability for damages and are entitled to qualified immunity for their official actions. *(Id.* at 7, 11.) Additionally, they assert that Plaintiff's claims are not properly brought in a civil rights action because they challenge the duration and conditions of Cordell's sentence and, accordingly, must be raised in a habeas corpus action. *(Id.* at 8.) Finally, Defendants contend that Plaintiff's first and third causes of action fail to state a claim

because Cordell's parole conditions are rationally related to his offense, and Plaintiff's second cause of action fails to state a claim because exhibits N and O to the Complaint show that there has been no violation of the plea agreement. *(Id.* at 10–11.)

### A. *The Complaint Should Be Dismissed Under the Fugitive Disentitlement Doctrine.*

Defendants first allege that Cordell's Complaint should be dismissed because he is a fugitive from justice. *(Id.* at 6.) The fugitive disentitlement doctrine provides that, "an individual who seeks to invoke the processes of the law while flouting them has no entitlement 'to call upon the resources of the Court for determination of his claims.'" *Conforte v. Comm'r*, 692 F.2d 587, 589 (9th Cir.1982) (quoting *Molinaro v. New Jersey*, 396 U.S. 365, 366, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970)). Courts have regularly applied the doctrine to dismiss both criminal appeals and related civil proceedings instituted by fugitives. *See, e.g., Molinaro*, 396 U.S. at 366, 90 S.Ct. 498 (appeal from criminal conviction); *United States v. $129,374 in U.S. Currency*, 769 F.2d 583, 587–88 (9th Cir.1985) (civil forfeiture proceeding); *Conforte*, 692 F.2d at 589–90 (appeal from decision of tax court arising from criminal conviction for tax fraud); *Doyle v. Dept. of Justice*, 668 F.2d 1365, 1365–66 (D.C.Cir.1981) (suit brought under the Freedom of Information Act for records relating to plaintiff's criminal sentence); *Griffin v. New York Corr. Comm'r*, 882 F.Supp. 295, 297 (E.D.N.Y.1995) (§ 1983 civil rights case); *Clark v. Dalsheim*, 663 F.Supp. 1095, 1096–97 (S.D.N.Y.1987) (habeas corpus petition).

But application of the fugitive disentitlement doctrine is discretionary. *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1054–55 (9th Cir.1991) (citing *Katz v.*

*United States*, 920 F.2d 610, 611–12 (9th Cir.1990); *Hussein v. I.N.S.*, 817 F.2d 63, 63 (9th Cir.1986)). It does not deprive the Court of jurisdiction to hear a plaintiff's claims, but rather it authorizes their dismissal based on equitable considerations. *Id.* (citations omitted). It is inequitable to allow fugitives "to press those cases where they expect to receive some benefit, while refusing to accept decisions imposing some burden. . . ." *Clark*, 663 F.Supp. at 1096 (citations omitted).

Allowing a fugitive to litigate his claims may also tend to encourage prison escapes and parole violations in cases where individuals believe their confinement or parole conditions are illegal or unreasonable. *Id.* (citing *Estelle v. Dorrough*, 420 U.S. 534, 541–42, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975); *Lewis v. Delaware State Hosp.*, 490 F.Supp. 177, 182 (D.Del.1980)). "Disentitlement punishes those who evade law and thus discourages recourse to flight." *Antonio–Martinez v. I.N.S.*, 317 F.3d 1089, 1092 (9th Cir.2003) (citing *Parretti v. United States*, 143 F.3d 508, 510 (9th Cir. 1998)).

For application of the disentitlement doctrine to be appropriate, the Court must first determine whether Plaintiff is actually a fugitive. *See United States v. Gonzalez*, 300 F.3d 1048, 1051 (9th Cir.2002). "The doctrine does not apply to [a party] just because he has not reported as directed to the probation office, in the absence of a showing that he has fled or hidden himself from the jurisdiction of the court." *Id.*

Plaintiff admits he is a fugitive who is actively evading arrest. Cordell has indicated that a warrant was issued for his arrest for violating his parole conditions, and he is a "PAL" (parolee-at-large). (Compl. Attach. Civil Cover Sheet 1.) Plaintiff's Complaint requests that the Court issue an injunction preventing the CDC from taking any action on the warrant so that Cordell can attend hearings in this case without fear of arrest.[1] (Compl.3.)

Plaintiff claims that although he is a parolee-at-large, he should be permitted to litigate the claims in his Complaint because he is challenging the legality of his parole. (Notice of Opp'n 1–2.) This argument fails. Courts consistently dismiss challenges to the legality of convictions and sentences due to the litigants' fugitive status. *See, e.g., Parretti*, 143 F.3d at 510–11 (dismissing appeal from denial of habeas petition when petitioner skipped bail and fled the country); *Clark*, 663 F.Supp. at 1096–97 (dismissing habeas petition where petitioner challenging conviction absconded from parole after serving his sentence).

It would be inequitable to allow Plaintiff to litigate his claims while he remains a fugitive. Cordell cannot both flout the law and at the same time call upon it for relief. The district court should **GRANT** Defendants' Motion to Dismiss the Complaint under the fugitive disentitlement doctrine. If, however, Cordell is either recaptured or surrenders, and he loses his fugitive status, the disentitlement doctrine will no longer apply. *Cf. Ortega–Rodriguez v. United States*, 507 U.S. 234, 249–51, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993) (holding that when a criminal defendant's flight and

---

1. Plaintiff's Complaint and his Opposition to the Motion to Dismiss both state that Cordell has asked the Court to issue an injunction preventing his arrest during the pendency of this case. (Compl. 3; Opp'n 1.) Although Plaintiff attempted to file a motion for preliminary injunction on March 5, 2007, the mo-

tion was rejected by the Court because Cordell did not provide proof that the motion was served on Defendants. (Discrepancy Order Rejecting Doc. [doc. no. 15] at 1.) Thus, no motion for preliminary injunction is pending at this time.

recapture occur before an appeal, the defendant's "former fugitive status" does not warrant dismissal).

### B. *Plaintiff's Claims Should Be Dismissed Because They Are Not Cognizable Under 42 U.S.C. § 1983.*

Defendants also allege that all three of Cordell's claims for relief should be dismissed because they are not properly raised in a civil rights action. (Defs.' Mem. 8–9.) Defendants state, "Because Plaintiff is challenging ... custody, his claims are not cognizable under 42 U.S.C. section 1983, but must be brought by petition for writ of habeas corpus." (Reply 3.) Plaintiff's Opposition does not address this argument.

■■■ A civil rights suit under § 1983 is not the appropriate mechanism for a person in state custody to challenge the legality of a criminal conviction or sentence. Rather, the validity of a conviction or sentence should be raised in a petition for habeas corpus. "[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Heck v. Humphrey,* 512 U.S. 477, 481, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (citing *Preiser v. Rodriguez,* 411 U.S. 475, 488–90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)); *see also Wilkinson v. Dotson,* 544 U.S. 74, 78, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005).

The Supreme Court has repeatedly emphasized "the need to ensure that state prisoners use only habeas corpus ... remedies when they seek to invalidate the duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson,* 544 U.S. at 81, 125 S.Ct. 1242. A prisoner's § 1983 action is barred, regardless of whether the complaint seeks damages or equitable relief, if the prisoner must demonstrate the invalidity of his confinement before he is entitled to relief. *Id.* at 81–82, 125 S.Ct. 1242; *Heck,* 512 U.S. at 487, 114 S.Ct. 2364; *Butterfield v. Bail,* 120 F.3d 1023, 1024 (9th Cir.1997) (discussing *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997)).

It is well-settled that habeas corpus is the exclusive remedy for a prisoner or parolee to challenge the duration of his sentence or the fact of his conviction. *Wilkinson,* 544 U.S. at 78, 125 S.Ct. 1242; *Heck,* 512 U.S. at 481, 114 S.Ct. 2364. It remains unsettled, however, whether a parolee who challenges the conditions of his parole may raise such a claim in a § 1983 case, or whether it must be raised in a habeas petition.

The Supreme Court held in *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), that a parolee could proceed with a habeas corpus petition to challenge his underlying sentence because he was still "in custody" within the meaning of the habeas statute. *Jones,* 371 U.S. at 243, 83 S.Ct. 373. Since that decision, courts have regularly found that parolees and probationers, who are subject to restraints on their freedom that are not felt by the common public, are "in custody" and can seek habeas relief. *See, e.g., Goldyn v. Hayes,* 444 F.3d 1062, 1064 (9th Cir.2006); *Williamson v. Gregoire,* 151 F.3d 1180, 1182–83 (9th Cir.1998). While deciding that habeas actions *may* be brought by parolees, *Jones* and its progeny left open the question of whether habeas corpus is the *exclusive* remedy available for a parolee who seeks to challenge the conditions of his "custody." The Seventh Circuit is the only circuit court of appeals

that has definitively answered the question.

In *Drollinger v. Milligan*, 552 F.2d 1220 (7th Cir.1977), the Seventh Circuit found that habeas corpus was the exclusive means for a probationer to challenge the terms of her probation. *Drollinger*, 552 F.2d at 1225. The court stated:

> Because probation is by its nature less confining than incarceration, the distinction between the fact of confinement and the conditions thereof is necessarily blurred. The elimination or substitution, for example, of one of the conditions of Rosanna's probation would free her substantially from her confinement; figuratively speaking, one of the "bars" would be removed from her cell.

*Id.* Because the parole conditions themselves keep a parolee "in custody," any challenge to those conditions must be brought in a habeas petition.

The Seventh Circuit again confronted the question in *Williams v. Wisconsin*, 336 F.3d 576 (7th Cir.2003). There, Williams filed a civil rights action challenging a condition of his parole that restricted him from international travel. *Williams*, 336 F.3d at 579. Relying on *Drollinger*, the court found Williams was challenging a term of his custody, and accordingly, he should have brought a habeas petition rather than a civil rights case. *Id.* at 580. The court explained the nature of a claim by a parolee challenging his parole conditions:

> For parolees, the [difference between a civil rights action and a collateral attack] is more metaphysical [than for prisoners], because the "conditions" of parole *are* the confinement. Requirements that parolees stay in touch with their parole officer, hold down a job, steer clear of criminals, or (as in Williams's case) obtain permission for any proposed travel outside the jurisdiction, are what

distinguish parole from freedom. It is because of these restrictions that parolees remain "in custody" on their unexpired sentences and thus may initiate a collateral attack while on parole.

*Id.* at 579.

The Ninth Circuit has not addressed whether these claims are exclusively the province of habeas corpus petitions or whether they can also be raised in a § 1983 complaint. In an unpublished decision, the Eighth Circuit approved of and followed the Seventh Circuit's analysis, finding that conditions of parole can only be challenged by means of a habeas petition. *Bass v. Mitchell*, 53 F.3d 335, 1995 WL 244043, at *1 (8th Cir.1995) (citing *Drollinger*, 552 F.2d at 1224–25). No other circuit court of appeals has addressed the issue, and the district courts have come to differing conclusions. *Compare Yahweh v. U.S. Parole Comm'n*, 158 F.Supp.2d 1332, 1340 (S.D.Fla.2001) (finding parole conditions may be challenged under either § 2254 or § 1983), *with Moreno v. California*, 25 F.Supp.2d 1060, 1063 (N.D.Cal.1998) (finding parole conditions are not cognizable under § 1983).

The Court finds that the Seventh Circuit has provided the more persuasive analysis. Without the conditions of his parole, there would be nothing keeping Plaintiff "in custody." The Supreme Court has clearly found that parolees are in custody, and habeas corpus petitions under 28 U.S.C. § 2254 are the appropriate vehicle for challenging state custody.

Cordell's first and third causes of action challenge the conditions of his parole. Plaintiff argues that the condition prohibiting him from entering Orange County is unconstitutional because it constitutes banishment and denies him freedom of association. (Compl. 3, 5; Compl. Mem. of P. & A. at 4–7, 11–13.) These claims force the Court to rule on the validity of the restrictions placed on Cordell by the CDC

as a part of his sentence, which can only properly be done in a habeas proceeding. *Cf. Wilkinson,* 544 U.S. at 82, 125 S.Ct. 1242 (quoting *Heck,* 512 U.S. at 487, 114 S.Ct. 2364) (finding claims to be cognizable under § 1983 because a favorable judgment would not "necessarily imply the invalidity" of plaintiff's conviction). Cordell asks the Court to invalidate the conditions of his parole, vacate the state court's judgment, and allow Plaintiff to complete his term of parole with different conditions. (Compl. Mem. of P. & A. at 13.) This is the type of immediate release from confinement that the Supreme Court has found to be at "the core of habeas corpus" and not cognizable under § 1983. *See Wilkinson,* 544 U.S. at 79, 125 S.Ct. 1242 (quoting *Preiser,* 411 U.S. at 489, 93 S.Ct. 1827). Accordingly, these claims cannot be raised in a § 1983 civil rights action and should be dismissed.

Plaintiff's second cause of action should also be dismissed; the claim alleges that Cordell's parole term has been extended beyond his sentence. (Compl.4.) He requests that the Court order his immediate release from parole, because the three-year term of parole included in his plea bargain should have already expired. (*Id.* at 7.) Plaintiff is directly challenging the duration of his sentence, which can only be done in a habeas petition. *Wilkinson,* 544 U.S. at 81, 125 S.Ct. 1242; *Heck,* 512 U.S. at 481, 114 S.Ct. 2364. Accordingly, the district court should **DISMISS** the claims in Cordell's Complaint for failure to state a claim. *See Butterfield,* 120 F.3d at 1025 (affirming dismissal for failure to state a claim under rule 12(b)(6) when plaintiff's § 1983 claim was barred by *Heck*).

## C. *Plaintiff's Damage Claims Against Defendants Tilton and Quintanilla Should Be Dismissed Because They Are Entitled to Absolute Immunity.*

The Eleventh Amendment grants the states immunity from private civil suits.

U.S. Const. amend. XI; *Henry v. County of Shasta,* 132 F.3d 512, 517 (9th Cir.1997), *as amended,* 137 F.3d 1372 (9th Cir.1998). This immunity applies to civil rights claims brought under § 1983, so an inmate cannot recover damages from the state under § 1983 unless the state waives its immunity. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). A federal court only has jurisdiction over a suit against a state when the relief sought is "prospective injunctive relief in order to end a continuing violation of federal law." *Armstrong v. Wilson,* 124 F.3d 1019, 1025 (9th Cir.1997) (quoting *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)) (internal quotations omitted).

Eleventh Amendment immunity also extends to state officials sued in their official capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will,* 491 U.S. at 71, 109 S.Ct. 2304 (citing *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)). "As such, it is no different from a suit against the State itself." *Id.* (citing *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

"[T]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns v. Reed,* 500 U.S. 478, 486–87, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). To determine whether absolute immunity is appropriate, the Court must look at the functions the officials perform rather than the titles they hold. *Anderson v. Boyd,* 714 F.2d 906, 908 (9th Cir.1983) (citing *Butz v. Economou,*

438 U.S. 478, 511–12, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)).

▪ Parole officials are entitled to absolute immunity for actions they take that are quasi-judicial in nature, such as the decision to grant, deny, or revoke parole. *Swift v. California*, 384 F.3d 1184, 1189 (9th Cir.2004); *Anderson*, 714 F.2d at 908–09; *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir.1981). Because the conditions imposed on a parolee are an integral part of the decision to grant parole, their imposition is a´ quasi-judicial function. *Anderson*, 714 F.2d at 909 (citing *Morrissey v. Brewer*, 408 U.S. 471, 478, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). Accordingly, Defendants are entitled to absolute immunity for conduct relating to the imposition and enforcement of Cordell's parole conditions. *See id.*

Defendants are also entitled to absolute immunity from Plaintiff's claim that they "allow[ed] him to be on parole for 6 months longer than [his] plea bargained length of 3 years" because the decision to continue or to terminate parole is "functionally comparable" to the quasi-judicial decision to grant, deny or revoke parole. *See Swift*, 384 F.3d at 1189; *Anderson*, 714 F.2d at 909; *Sellars*, 641 F.2d at 1303.

▪ Defendants Sanchez and Trujillo, however, are not entitled to absolute immunity for actions they took in a law enforcement capacity. "Under California's system of parole, a parole agent acts as a law enforcement official when investigating parole violations and executing parole holds." *Swift*, 384 F.3d at 1191. When issuing an arrest warrant or investigating a possible parole violation, a parole agent is functioning as a police officer. *Id.* at 1191–92 (citing *Johnson v. Rhode Island Parole Bd. Members*, 815 F.2d 5, 8 (1st Cir.1987)). The Ninth Circuit has held that parole agents are not entitled to absolute immunity when acting in law enforcement functions. *Id.*

Accordingly, the district court should **DISMISS** Cordell's claims for monetary damages asserted against Defendants Tilton and Quintanilla because they are absolutely immune from civil liability for actions taken in their official capacity concerning the granting or revocation of parole and the imposition and enforcement of parole conditions. Defendants Sanchez and Trujillo, however, are not entitled to absolute immunity for law enforcement actions taken in their capacity as parole agents, so Plaintiff's claims against them should not be dismissed on this ground.

### D. *Plaintiff's Claims Should Be Dismissed Because Defendants Are Entitled to Qualified Immunity.*

"[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A constitutional right is "clearly established" if it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). This standard ensures that government officials are on notice of the illegality of their conduct before they are subjected to suit. *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Qualified immunity is immunity from suit for monetary damages, but it is not immunity from suit for declaratory or injunctive relief. *Hydrick*

*v. Hunter,* 449 F.3d 978, 992 (9th Cir.2006). It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

"The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope,* 536 U.S. at 736, 122 S.Ct. 2508; *see also Saucier v. Katz,* 533 U.S. at 201, 121 S.Ct. 2151. If the allegations make out a constitutional violation, the next step is to determine whether the right alleged to have been violated is "clearly established." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. In ruling on qualified immunity, the court must decide the " 'purely legal' issue of 'whether facts alleged by the plaintiff support a claim of violation of clearly established law.' " *Lytle v. Wondrash,* 182 F.3d 1083, 1086 (9th Cir.1999) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 528 n. 9, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).

**1. First and Third Causes of Action: Legality of a Parole Condition Restricting Plaintiff from Orange County**

Cordell alleges in his first and third causes of action that Defendants are liable for violating his constitutional rights because they enforced a parole condition that "banished" him from Orange County, where he had lived for twenty years and had attended church and AA meetings. (Compl. 3, 5; Opp'n 4–6, 11–13.) Plaintiff also asserts that the banishment deprived him of freedom of association. (Compl. 5; Opp'n 11–13.)

**a. Violation of a Constitutional Right**

Plaintiff does not have a constitutional right to be paroled to the location of his choice. *Bagley v. Harvey,* 718 F.2d 921, 924 (9th Cir.1983); *Zupan v. Brown,* 5 F.Supp.2d 792, 804 (N.D.Cal.1998); *see also Alonzo v. Rozanski,* 808 F.2d 637, 638 (7th Cir.1986). Indeed, even being paroled to a state other than one's home state does not necessarily violate any constitutionally-protected liberty interest. *See Bagley,* 718 F.2d at 925 (rejecting a claim that parolee was unconstitutionally banished when he was paroled to Iowa and forbidden from entering his home state of Washington).

But under some circumstances, parole conditions that cause the de facto banishment of a parolee can amount to an unconstitutional infringement of liberty. *See Dear Wing Jung v. United States,* 312 F.2d 73, 76 (9th Cir.1962) (finding unconstitutional banishment based on a sentencing condition that required the foreign citizen defendant to depart from the United States). Thus, Cordell's claim that he was banished from his home due to the imposition of an unreasonable parole condition is based on a valid legal theory that, under the correct factual situation, could entitle him to relief.

"[A] court granting probation [or parole] may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." *United States v. Knights,* 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001). Determining whether a parole condition is constitutionally permissible is a fact-specific inquiry. A special condition of parole will be upheld if it has a rational basis and is reasonably related to the nature of the offense and the history and characteristics of the offender. *See United States v. T.M.,* 330 F.3d 1235, 1240 (9th Cir.2003); *Bagley,* 718 F.2d at 925; *see also Yahweh v. U.S. Parole Comm'n,* 158 F.Supp.2d 1332, 1344 (S.D.Fla.2001) (applying the "reasonably related" test to parolee's challenge to parole conditions made on the basis of freedom of association). A parole

condition can impose no greater deprivation of liberty than is reasonably necessary to advance the government interest underlying the condition. *See United States v. Rearden*, 349 F.3d 608, 621 (9th Cir.2003).

Cordell pled guilty to assault with a deadly weapon resulting in great bodily injury. (Compl. Ex. N at 1–2.) He admitted, as a basis for his guilty plea, "On 12/20/00 in [Orange County] I willfully and unlawfully assaulted [the victim] with a deadly weapon, a wooden dowel, and I personally inflicted great bodily injury upon [her] in the form of a broken finger and 50+ stitches, with the specific intent to do so." (*Id.* at 2.) Plaintiff thus admitted he was a violent offender.

Cordell's victim requested that Plaintiff not be returned to Orange County upon his release from prison. (*See* Compl. Ex. A at 1.) As a result of the victim's request and CDC's concerns for her safety, Cordell was paroled to San Diego rather than Orange County. (*Id.*) He was placed under "High Control" parole supervision because of the violent nature of his offense. (*Id.*)

Plaintiff's parole condition was rationally related to his offense. The CDC's decision to prevent Cordell from entering Orange County while on parole was based on the concern that Plaintiff would be a danger to his victim if paroled near her home, and on the victim's stated desire to keep Cordell away from her. This is a rational basis for restricting Plaintiff from Orange County, and it is reasonably related to the violent nature of Cordell's offense. *Cf. Samson v. California*, 547 U.S. ——, 126 S.Ct. 2193, 2200, 165 L.Ed.2d 250 (2006) (discussing the state's substantial interest in supervising parolees because they are likely to reoffend).

The facts of the present case are similar to *Bagley*. In that case, Bagley was paroled to Iowa, even though his home state was Washington. *Bagley*, 718 F.2d at 923. He was given a special condition of parole that prohibited him from returning to Washington during the term of his parole. *Id.* Bagley contended that the condition violated his right to choose the location of his home and thus infringed his constitutional right to interstate travel. *Id.* The court disagreed, finding that "a parolee does not have a constitutional interest that entitles him to parole in any particular district." *Id.* at 924. The court upheld the condition, which was reasonably related to Bagley's history of threatening witnesses in the Seattle, Washington area. *Id.*

Plaintiff's case, however, differs from *Bagley* in one important respect. Bagley's parole condition was not absolute; he could travel to Washington for purposes of litigation or child visitation with the parole commissioner's prior approval. *Id.* at 923. Here, Cordell is absolutely prohibited from entering Orange County, with no possible exceptions. (*See* Compl. Ex. A at 1, Ex. Ex. B at 1, Ex. C at 2 (stating the prohibition from entering Orange County as an absolute).) The severity of this condition is evidenced by the fact that two of Plaintiff's parole violations occurred when he was attempting to visit his family and his children, who reside in Orange County. (Compl. Mem. of P. & A. at 1, 3.)

Taken in a light most favorable to Cordell, Plaintiff's Complaint sufficiently alleges the violation of a constitutional right, because the parole condition that absolutely restricts Cordell from entering Orange County for any reason may be overbroad. The condition is reasonably related to the government's interest in protecting the safety of the victim, but it may involve a greater deprivation of liberty than is necessary to accomplish its purpose.

Other cases that have upheld restrictive parole conditions have done so explicitly because the conditions in those cases provided an exception whereby the parole agent or another supervisor could give express permission for the parolee to exceed the condition. *See, e.g., Rearden,* 349 F.3d 608 (upholding parole condition prohibiting use of the internet because it provided an exception for access with prior consent of probation officer); *United States v. Zinn,* 321 F.3d 1084, 1093 (11th Cir.2003) (same); *Bagley,* 718 F.2d at 923–24 (upholding condition prohibiting parolee from entering Washington unless he first received permission from the parole commissioner for purposes of litigation or child visitation). Here, Plaintiff's conditions contain no exception.

For the purposes of the qualified immunity analysis, the Court need only look at whether, taken in the light most favorable to the Plaintiff, the Complaint sets forth factual allegations showing that the Defendants' conduct violated a constitutional right. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. On the facts alleged, Cordell has sufficiently alleged a constitutional violation because the condition of his parole absolutely restricting him from entering Orange County is not reasonably necessary to accomplish the government's goal of protecting the safety of the victim.

**b. Whether the Right Was Clearly Established**

Although Plaintiff's claims of illegal banishment and denial of freedom of association allege constitutional violations, the qualified immunity analysis also requires this Court to determine whether those rights were clearly established. *Saucier v. Katz,* 533 U.S. at 201, 121 S.Ct. 2151. "Whether the right at issue in a claim of qualified immunity is clearly established is judged as of the date of the incident al-

leged and is a pure question of law...." *Phillips v. Hust,* 477 F.3d 1070, 1079 (9th Cir.2007) (citing *Act Up!/Portland v. Bagley,* 988 F.2d 868, 873 (9th Cir.1993)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. at 640, 107 S.Ct. 3034; *see also Saucier,* 533 U.S. at 202, 121 S.Ct. 2151.

"[W]hen a public official acts in reliance on a duly enacted statute or ordinance, that official ordinarily is entitled to qualified immunity." *Dittman v. California,* 191 F.3d 1020, 1027 (9th Cir.1999) (citing *Grossman v. City of Portland,* 33 F.3d 1200, 1210 (9th Cir.1994)). But qualified immunity will not be granted to a public official who enforces a statute that is "patently violative of fundamental constitutional principles." *Grossman,* 33 F.3d at 1209.

California Penal Code section 3003 provides that "an inmate who is released on parole shall be returned to the county that was the last legal residence of the inmate prior to his or her incarceration." Cal.Penal Code § 3003(a) (West Supp.2007). But "an inmate may be returned to another county if that would be in the best interests of the public." Cal.Penal Code § 3003(b). The best interests of the public are determined, in part, by the need to protect the safety of the victim, a witness, or any other person, and the chance that a certain location will reduce the inmate's chance of successfully completing parole. Cal.Penal Code. §§ 3003(b)(1)-(2). Additionally, "an inmate who is released on parole shall not be returned to a location within 35 miles of the actual residence of a victim of ... a felony in which the defendant inflicts great bodily injury[,]" if the victim requests additional distance and the CDC finds there is a need to protect the victim's safety. Cal.Penal Code § 3003(f).

In imposing the conditions of Cordell's parole, the Defendants relied on these statutes. Defendants determined that the interests of the public were best served by releasing Plaintiff to a county away from the victim's home, which is authorized by California Penal Code section 3003. These statutory provisions were duly enacted by the California legislature, and the Court is not aware of any case law in which their constitutionality was seriously questioned. For qualified immunity to be withheld, "in the light of preexisting law the unlawfulness [of the officer's conduct] must be apparent." *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034. The California parole regulations are not obviously unconstitutional, and accordingly, Plaintiff cannot prove that Defendants have violated Cordell's clearly established constitutional rights by following them. Defendants are entitled to qualified immunity for Cordell's first and third claims for relief.

### 2. *Second Cause of Action: Legality of the Extension of Plaintiff's Parole Period Beyond Three Years*

Plaintiff asserts in his second claim that Defendants violated his right to due process by extending his term of parole beyond the three-year period included in his plea agreement. (Compl. 4; Compl. Mem. of P. & A. at 7–11.) Cordell was informed during a term of recommitment to prison following a parole violation that the time during which he was incarcerated for the revocation would be added onto his parole term. (Compl. Mem. of P. & A. at 8.) He complains that this constitutes an unconstitutional extension of his sentence. (*Id.* at 8–9.)

#### a. Violation of a Constitutional Right

Under California law, the "[t]ime during which parole is suspended because the prisoner has absconded or has been returned to custody as a parole violator shall not be credited toward any period of parole unless the prisoner is found not guilty of the parole violation." Cal.Penal Code § 3000(b)(5) (West Supp.2007); *see also* Cal.Code Regs. tit. 15, § 2515(a) (West 2007). Accordingly, the time that Plaintiff served for each of his parole violations is not counted towards the three-year parole period. The "extension" of Cordell's parole for the periods that he was in custody was done in compliance with California law. Plaintiff contends, however, that this "extension" violated his due process rights because it subjected him to punishment beyond the term he agreed to, and "[t]he CDC has no constitutional or legal right to change such an agreement." (Compl. Mem. of P. & A. at 10.)

A criminal defendant who pleads guilty in exchange for certain promised actions is entitled to fulfillment of those promises. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *Davis v. Woodford*, 446 F.3d 957, 960–61 (9th Cir.2006). Due process requires that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello*, 404 U.S. at 262, 92 S.Ct. 495; *Buckley v. Terhune*, 441 F.3d 688, 694 (9th Cir.2006). One remedy for the government's breach of a plea agreement is resentencing. *See Gunn v. Ignacio*, 263 F.3d 965, 971 (9th Cir.2001) (granting habeas petition and remanding to state court for resentencing).

The interpretation of state plea agreements is governed by state law. *Ricketts v. Adamson*, 483 U.S. 1, 6 n. 3, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987); *Buckley*, 441 F.3d at 694–95. In California, all contracts, including plea agreements, are deemed to incorporate existing state law

even if they do not contain an explicit provision to that effect. *Davis,* 446 F.3d at 962 (citing *People v. Gipson,* 117 Cal. App.4th 1065, 1069–70, 12 Cal.Rptr.3d 478, 481 (2004)).

Plaintiff's plea agreement did not expressly incorporate California Penal Code section 3000. (*See* Compl. Ex. N.) Nevertheless, the agreement incorporated all existing California law as well as any future amendments to the applicable California statutes. *Davis,* 446 F.3d at 962 (citing *Gipson,* 117 Cal.App.4th at 1070, 12 Cal. Rptr.3d at 481). Existing California law provided that periods when Cordell was in custody for parole violations were not counted towards his three-year period of parole; Plaintiff was to serve three years of parole, out of custody. *See* Cal.Penal Code § 3000(b)(5). Consequently, the CDC did not violate Cordell's plea bargain by "extending" his agreed-upon sentence. Plaintiff has not demonstrated that his constitutional rights to due process were violated. *Cf. Wallace v. Greer,* 821 F.2d 1274, 1278 (7th Cir.1987) (granting summary judgment for defendant in § 1983 case where plaintiff claimed his sentence was illegally extended, because plaintiff's term of mandatory supervised release was tolled under state law during the time he had absconded from parole supervision).

### b. Whether the Right Was Clearly Established

As was the case with Cordell's first and third causes of action, the parole conditions Plaintiff complains of in his second cause of action were set pursuant to duly-enacted statutes. *See Dittman,* 191 F.3d at 1027. Thus, even if Plaintiff could make out a due process claim, Defendants are entitled to qualified immunity because the term of Cordell's parole was calculated in accordance with the applicable California statutes. A reasonable parole officer or official would have believed that reliance on provisions of the California Penal Code was appropriate and in compliance with constitutional standards.

Accordingly, Defendants are entitled to qualified immunity for all three of Plaintiff's claims. Cordell's claims for damages should be **DISMISSED**.

### E. *Plaintiff's Claims Are Without Merit.*

Defendants also assert that Plaintiff's claims should be dismissed because the facts alleged fail to state a constitutional claim that would entitle him to relief. (Defs.' Mem. 10–11; Reply 3–4.) Claims one and three, Defendants allege, will not entitle Cordell to relief because Plaintiff's parole conditions are rationally related to his offense. (Defs.' Mem. 10.) Defendants claim that ground two fails to state a claim because they have not violated Cordell's plea agreement. (*Id.* at 11.)

Pursuant to Rule 12(b)(6), the Court may grant a motion to dismiss for failure to state a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The Court must assume the Plaintiff's factual allegations are true and resolve all reasonable inferences in his favor. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001). When reviewing the sufficiency of a complaint, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Hydrick v. Hunter,* 466 F.3d 676, 686 (9th Cir.2006) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro,*

250 F.3d at 732 (citing *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988)).

### 1. *Claims One and Three: Banishment*

In his first claim for relief, Plaintiff asserts that the parole condition prohibiting him from entering Orange County is "illegal and unconstitutional." (Compl.3.) He contends that Defendants are liable for this unconstitutional "banishment" because they imposed and enforced the parole condition, which is "unreasonable, not rehabilitative and too broad." (Compl. Mem. of P. & A. at 4.) Because he was not allowed to return to Orange County, he says, his marriage was "strained . . . to the point of divorce, costing him his house of 14 years, as well as child support." (*Id.*) He claims that he was again banished after his second parole violation when he was paroled to Riverside County rather than San Diego, where he had attempted to create a new life. (Compl. 3; Compl. Mem. of P. & A. at 3.) Plaintiff complains that he was "banished from his home, children, church and employment." (Compl. Mem. of P. & A. at 2.) Defendants argue, on the other hand, that Cordell is not entitled to relief because the parole conditions imposed are rationally related to his violent offense, so his claims should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mem. 10.)

As discussed above, the condition of Cordell's parole that prevented him from living in Orange County had a rational basis and was reasonably related to his crime and the interests of public safety. But the condition was overbroad because it was an absolute prohibition and did not provide any exceptions. The government's desire to protect the safety of Plaintiff's victim does not require an absolute prohibition, under all circumstances, from entering Orange County. Viewing the facts in a light most favorable to Cordell, Plaintiff's Complaint sufficiently alleges a constitutional violation, and thus, dismissal under 12(b)(6) for failure to state a claim is not warranted. Defendants' Motion to Dismiss claims one and three should be **DENIED.**

### 2. *Claim Two: Violation of Plaintiff's Plea Agreement*

Cordell alleges in claim two of his Complaint that Defendants have illegally violated his plea agreement by keeping him on parole after the expiration of the three-year parole term contained in the agreement. (Compl. 4; Compl. Pl.'s Mem. of P. & A. at 7–8.) As discussed above, however, Defendants did not violate Plaintiff's plea agreement. The agreement incorporated a California Penal Code provision which provides that time during which a parolee is in custody for a parole violation is not counted towards the parole period. Cordell was subject to three years of parole, not including the time that he served for each of his parole violations. Defendants did not violate Plaintiff's plea agreement. Accordingly, Cordell's second claim should be **DISMISSED** for the additional reason that it fails to state a claim under Rule 12(b)(6).

### IV. PLAINTIFF'S MOTION TO AMEND

Plaintiff has filed a Motion to Amend Complaint [doc. no. 11], in which he seeks to amend his Complaint to sue the Defendants in their individual capacities rather than their official capacities. (Mot. to Amend 1.) The Motion was filed after Defendants filed their Motion to Dismiss and appears to be an attempt to avoid the dismissal of Plaintiff's Complaint based on the absolute or qualified immunity of De-

fendants for actions taken in their official capacities.

 The Court must grant a pro se litigant leave to amend his complaint "even if no request to amend the pleading was made, unless [the Court] determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d at 1127 (quotations and citations omitted); *Noll v. Carlson,* 809 F.2d 1446, 1447 (9th Cir.1987). "Failure to grant leave to amend the complaint ... 'is improper unless it is clear ... that the complaint could not be saved by any amendment.'" *Lira v. Herrera,* 427 F.3d 1164, 1169 (9th Cir.2005) (quoting *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,* 368 F.3d 1053, 1061 (9th Cir.2004)). "'[T]he rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant.'" *Lopez,* 203 F.3d at 1131 (quoting *Noll,* 809 F.2d at 1448). It is only where a complaint lacks merit entirely or amendment of a pro se litigant's complaint would be futile that denial of leave to amend is appropriate. *Id.* at 1129; *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 339 (9th Cir.1996).

Here, granting Plaintiff leave to amend the Complaint would be futile. Even if Cordell were to amend his Complaint to assert claims against Defendants in their individual capacities, the Complaint is still defective. As discussed above, the Complaint should be dismissed because Plaintiff's claims can only be brought in a habeas corpus petition, not in a § 1983 civil rights complaint. Additionally, Cordell is currently a fugitive from justice and is not entitled to proceed with the prosecution of this action. Granting Plaintiff leave to amend would not cure either of these defects. Thus, Cordell's Motion to Amend should be **DENIED.**

## V. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss should be **GRANTED,** and this action should be **DISMISSED WITH PREJUDICE** in its entirety. Plaintiff's Motion for Leave of Court to Amend Complaint should be **DENIED.**

This Report and Recommendation will be submitted to the United States District Court judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before August 31, 2007. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before September 13, 2007. The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

Aug. 8, 2007.